ON APPLICATION FOR REHEARING
PER CURIAM.
Defendant-appellant’s application for rehearing is denied.
Defendant-appellant has applied for a rehearing in this matter setting forth two respects in which he alleges this Court erred in its opinion on original hearing. These alleged errors are as follows:
“1.
The court was in error in its factual findings that the $20,000.00 note was due, and that MICHAEL EAVES failed to pay the note. (Opinion Page 1331)
“2.
The court was in error in holding that no sale had, in fact, taken place.”
Neither of these allegations of error has merit.
In support of the allegation of error set forth in paragraph one above, the appellant’s brief contains the following statement:
“THE COURT WAS IN ERROR IN ITS FACTUAL FINDINGS THAT THE $20,-000.00 NOTE WAS DUE, AND THAT MICHAEL EAVES FAILED TO PAY THE NOTE. (Opinion page 5)
“It has not been denied by any parties to the action that on or about February 11, 1983, MICHAEL EAVES executed both a Chattel mortgage with accompanying note, and a ‘hand note’ of the same date. The hand note reflected that it was due ninety (90) days after date, which would have been May 12, 1983. Plaintiff filed his suit on April 26, 1983 at which time a writ of sequestration was issued which date was prior to the due date of the ninety (90) day note in favor of Rapides Bank and Trust Company in Alexandria.”
The applicant may be understandably piqued at what appears to him to be a premature initiation of legal proceedings. However, two matters should not be overlooked: (1) as finally concluded by the trial court and this Court, there was no sale at all, and (2) at the time this case came to trial on December 1, 1983, applicant had never made any payment on the note or to Gordon Bradford. With reference to the bank note, the testimony given by the loan officer of the Rapides Bank and Trust Company and plaintiff was explicit on the point and was not challenged by defendant-appellant.
Plaintiff, Gordon Bradford, testified as follows as recorded on transcript pages 74 and 75:
“Q All right. Now, who paid off that note that we have marked as Bradford-1?
A I did.
*1335 Q Okay. Did Mr. Eaves pay any sums whatsoever on that note, to your knowledge?
A No.
Q Okay, did he pay you any sums whatsoever to pay on that note?
A No, sir.
Q Okay, How much — did you pay that note off when it came due?
A No, I — yes, I paid this one off. I renewed it with another note to pay it off.
Q Okay. And what — that exhibit we’ve marked as Bradford-2, is that that renewal note?
A Right.
Q Okay, and then what — who paid off Bradford-2?
A I did.
Q Okay. Did Mr. Eaves ever pay any sums on that note, [sic]
A No.
Q Okay, did he ever give you any money to pay on that note?
A No.
Q So in reality, what you did was you borrowed Twenty Thousand Dollars ($20,000.00) from the bank and then paid the bank back that Twenty Thousand Dollars ($20,000.00). Is that right?
A Right, plus interest.”
Mr. Robert A. Leavines testified as follows as recorded on transcript pages 92 and 93:
“Q Okay. In the exhibit that we have, Bradford-2, that — would that be a continuation of that same note the— what we have as Bradford-1?
A Yes, sir. What had happened, the note became due. Mr. Eaves was not in a position to pay the note off. Mr. Bradford said, T am not going to cosign the note again. I want to pay it in full.’, at which time I pledged the certificate, once again, to the note for Fifteen Thousand Dollars ($15,000.00), made him a hand note for the Twenty Thousand Dollars ($20,000.00). I then endorsed the note over to Mr. Bradford for collection if that’s what he wished to do.”
Inasmuch as we have held that no sale took place between Bradford and Eaves, the fact that Eaves made no payment on the $20,000 note may be of no significance. However, since he has made the fact a point of issue in his application for rehearing we deem it appropriate to amplify our opinion on this point. On March 24, 1983, Eaves and his wife filed for bankruptcy and the record contains a certificate showing their discharge in bankruptcy dated June 23, 1983. As noted in our original opinion Eaves pleaded this discharge extinguished “the obligation sued upon herein.” Tr. 47. The fact remains that Eaves himself admitted that he never made any payment on the $20,000 note.
As recorded on pages 129 and 130 of the transcript of testimony, Michael Eaves testified as follows:
“Q Have you ever paid any monies to the Rapides Bank on the note that we’ve discussed here earlier as— listed as Bradford-1 and Bradford-2?
A No, sir, I hadn’t. The note hadn’t come due at the time.
Q I’m going to show you exhibit Bradford-1. Did you ever pay any sums on that note whatsoever?
A No, I didn’t ’cause my note wasn’t due.
Q Do you know when that note became due?
A Yeah, ninety (90) days from February the 11th.
Q Okay. Has over ninety (90) days passed since that date?
A Yes, sir.”
As recorded on page 134 of the transcript, Michael Eaves testified as follows:
“RECROSS EXAMINATION
BY MR. HUMPHRIES:
Q Did you pay the note when it became due?
*1336 A No, ’cause I didn’t have no loader.
Q Did you buy the loader from Gordon Bradford, you contend?
A Yes, sir.”
REHEARING DENIED.